

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JAMES A. HEGEDUS and <br> VIRGINIA E. HEGEDUS <br> Plaintiffs, <br><br> v. <br><br> ROBERT L. ROSS, <br> ONEIDA SANDRA ROSS, and <br> CARL A. SPANGLER <br> Defendants. | ) <br> ) <br> ) <br> ) Civil Action No. 5:11cv00018 <br> ) <br> ) <br> ) By: Michael F. Urbanski <br> )     United States District Judge <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiffs James A. and Virginia E. Hegedus, Virginia residents proceeding pro se, sued three Delaware residents, Carl A. Spangler, Robert L. Ross and Oneida Sandra Ross, for fraud, misrepresentation and other torts arising out of the purchase of a home in Lincoln, Delaware. Plaintiffs allege that Spangler and the Rosses are long time business partners who build and sell homes in Delaware. The gravamen of the complaint is that neither Spangler nor the Rosses made certain disclosures allegedly required under Delaware law, including that the Delaware property was not zoned for business purposes and that it was subject to being "buzzed" by a crop duster or other agricultural activities associated with neighboring properties.

Defendants moved to dismiss for lack of personal jurisdiction. (Dkt. # 9, # 12.) It is plain from the pleadings and briefs filed in this case that this matter concerns representations and disclosures surrounding a real estate sale in Delaware, and that defendants have insufficient contacts with Virginia to warrant the exercise of personal jurisdiction by a Virginia court over them. As such, defendants' motions to dismiss are **GRANTED**.

# I.

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law. See ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 622 (4th Cir. 1997); Fed. R. Civ. P. 4(k)(1)(A). Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, see English & Smith v. Metzger, 901 F.2d 36, 38 (4th Cir. 1990), "the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one." Stover v. O'Connell Assocs., Inc., 84 F.3d 132, 135-36 (4th Cir. 1996). The question, then, is whether the defendant has sufficient "minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.3d 95 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

The "minimum contacts" test requires that defendants purposefully avail themselves of the forum state. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 463 (1985). This test aims to ensure defendants are not "hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts," id. at 475, and affords defendants protection "from having to defend [themselves] in a forum where [they] should not have anticipated being sued." Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 277 (4th Cir. 2009) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)). Determining the reach of judicial power over persons outside of a state's borders under the International Shoe standard is undertaken through two different approaches—by finding specific jurisdiction based on conduct connected to the suit or by finding general jurisdiction. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). General jurisdiction exists where a defendant's overall

contacts with the forum state are continuous and systematic. Specific jurisdiction, on the other hand, focuses on the conduct giving rise to the suit. The factual allegations set forth in the complaint in this case do not support the exercise of personal jurisdiction under either the specific or general jurisdiction tests.

## II.

Defendants have had scant contact with Virginia. The complaint alleges that Spangler and the Rosses live in Delaware and "are long-time business partners who build and sell homes in Delaware." (Dkt. # 1, ¶ 2.) In contrast, plaintiffs are Virginia residents who traveled to Delaware for the purchase of real estate there. The complaint indicates that plaintiffs executed the Agreement of Sale in Delaware on April 24, 2006. (Dkt. # 1, ¶¶ 6-8.) The Agreement of Sale is expressly governed by Delaware law. (Dkt. # 1, Ex. A, ¶ 20.) Defendant Spangler executed the Agreement of Sale in Delaware on April 25, 2006, and mailed it to the plaintiffs in Virginia. Exhibit B to the complaint is an information/specification sheet on the house constructed by Spangler and sold to the plaintiffs. It too provides that Delaware law governs the sale. (Dkt. # 1, Ex. B, at 6.) The next month, plaintiffs returned to Delaware to deliver some upgraded lighting fixtures and met with Spangler and the closing attorney. (Dkt. # 1, ¶ 9.) The HUD-1 Settlement Statement, signed by plaintiffs, Spangler and the Rosses, indicates that the closing on the house took place in Milford, Delaware on June 14, 2006. (Dkt. # 1, Ex. C, at 1.) Plaintiffs contend that at the time Spangler signed the Agreement of Sale, he was not the owner of the property, and only acquired title from the Rosses between the date of the contract and closing.[1]

---

[1] The Agreement of Sale between Spangler and the Rosses, dated May 1, 2006, also is governed by Delaware law. (Dkt. # 1, Ex. I, ¶ 20.)

On March 3, 2009, plaintiffs wrote defendants requesting that they "buy back" the house. This letter references an investigation of the Delaware attorney who served as settlement agent with the Delaware Bar and an investigation of two realtors involved with the listing and sale of the property with the Delaware Bureau of Professional Licensing. (Dkt. # 1, Ex. F, at 1.) This letter and another attached as Exhibit H, make allegations regarding defendants' failures to comply with disclosure obligations under Delaware law.

In their complaint, plaintiffs allege that certain disclosures were not made to them in violation of Delaware law, in particular that the property was not zoned for business use and that it was susceptible to nuisances posed by neighboring agricultural uses, such as being "buzzed" by a crop duster. (Dkt. # 1, ¶¶ 11-14.) Attached as Exhibit E to the complaint is a blank new construction disclosure form approved by the Delaware Real Estate Commission. In addition, plaintiffs allege that defendant Robert Ross committed perjury by making false statements concerning the sale of the property at a Delaware Real Estate Commission hearing and by signing certain affidavits. (Dkt. # 1, ¶ 29.) There is no allegation that this real estate commission hearing took place in Virginia or that these affidavits were executed in Virginia.

There is, in fact, no allegation in the complaint that the Rosses or Spangler traveled to Virginia in connection with the sale of this Delaware real estate, nor any allegations concerning Virginia at all, other than the fact that plaintiffs are Virginia residents. (Dkt. # 1, ¶¶ 1, 28.)

In response to the motion to dismiss, plaintiffs make a number of assertions regarding personal jurisdiction, as follows:

> Defendant Spangler signed the Agreement of Sale on April 25, 2006, the date after the Plaintiffs returned to Virginia. A copy of the agreement was mailed to Virginia. A $10,000.00 check, drawn on a Virginia bank, was tendered, as required by Defendants. The builders contract was prepared by Defendants Ross. Defendant Carl Spangler mailed copies of blueprints to the Plaintiffs in

> Virginia. These blueprints were contracted by the Rosses. Defendant Spangler made numerous phone calls to Plaintiffs' residence in Virginia with updates and also requested Plaintiffs return to Delaware to purchase lighting fixtures, needed to obtain the Certificate of Occupancy; the certificate was issued to the Rosses on June 6, 2006.
>
> The deed to the property, **signed by the Rosses,** was mailed to Virginia.

(Dkt. # 22, at 4-5.) Based on these assertions, plaintiffs argue that:

> Virginia's long-arm statute allows this Court to obtain personal jurisdiction over Defendants who have clearly commited a tort in another state which has caused harm in this Commonwealth, and to obtain personal jurisdiction over Defendants who have followed a persistant course of conduct that perpetrates that tort.

(Dkt. # 22, at 6.)[2]

### III.

These facts do not support the exercise of personal jurisdiction over defendants under either the general or specific jurisdiction standards. Despite the fact that "there is no hard-and-fast rule for determining when a defendant's contacts with the forum state reach the level necessary to justify a finding of general personal jurisdiction," Wright v. Suntrust Bank, No. 1:11-cv-00041, 2011 WL 1984468, at *3 (S.D. W.Va. May 20, 2011), the few guiding cases available indicate that, viewing the facts alleged in the light most favorable to the plaintiffs, there is simply no basis for a finding of general jurisdiction. According to these guiding cases, "continuous and systematic" can turn on such issues as:

---

[2] While a provision of Virginia's long-arm statute allows a court to obtain personal jurisdiction over a defendant causing injury within the Commonwealth based on tortious activity outside the Commonwealth, it also requires such a defendant to have regular contacts with the Commonwealth. See VA Code Ann. § 8.01-328.1.4 ("Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth *if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in this Commonwealth;*") (emphasis added). There is nothing in plaintiffs' complaint to support the regular, persistent or substantial contact necessary to satisfy the second prong of Va. Code § 8.01-328.1.4.

a) whether the defendant has any physical presence in the forum state, see ESAB Group v. Centricut, Inc., 126 F.3d 617, 624 (4th Cir. 1997);
b) the proportion of defendant's total business activities that is conducted in the forum state, see id.;
c) the extent to which advertising or solicitation of business is directed specifically at particular individuals, or whether it is of a more general nature, see Boone v. Sulphur Creek Resort, Inc., 749 F. Supp. 195, 199 (S.D. Ind. 1990); and
d) the extent to which the nonresident defendant created long-term business relationships with resident customers of the forum state, see Metcalfe v. Renaissance Marine, Inc., 566 F.3d 324, 335 (3d Cir. 2009); see also Roberts v. Synergistic Int'l, LLC, 676 F. Supp. 2d 934, 942 (E.D. Cal. 2009) ("Longevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets are among the indicia of such a presence.").

Id. There is no indication that the defendants have ever had physical presence in Virginia, and there are no allegations that the defendants do the bulk of their business or even solicit business in Virginia. The plaintiffs also do not allege that the defendants have long-term business relationships with any Virginia residents. Because plaintiffs allege no contacts that even approach the extent of those outlined in these guiding cases, it is plain that the alleged contacts are not "continuous and systematic" with Virginia, but rather an isolated set of contacts related to the specific real estate sale at hand.

With regard to specific jurisdiction, a court is required to evaluate "(1) the extent to which the defendant has purposefully availed itself of the privilege of conducting activities in the state; (2) whether the plaintiffs' claims arise out of those activities directed at the state; and (3) whether the exercise of personal jurisdiction would be constitutionally 'reasonable.'" Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc., 334 F.3d 390, 397 (4th Cir. 2003) (citing ALS Scan, Inc. v. Digital Serv. Consultants, 293 F.3d 707, 711–12 (4th Cir. 2002)).

The Fourth Circuit has identified a number of factors for the court to consider in assessing whether defendants have purposefully availed themselves of the privilege of conducting activities in Virginia. These factors include the following:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

Consulting Eng'rs Corp v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted).

Consideration of these factors yields the inescapable conclusion that defendants have not purposefully availed themselves of anything to do with Virginia. Defendants have no offices or agents in Virginia, and there is no allegation that they own property here. There is no allegation that defendants solicited or initiated the sale of the Delaware property in Virginia. Nothing in the pleadings suggests that defendants have engaged in any significant or long-term business activities in Virginia. The real estate contract at issue is governed by Delaware law. There is no allegation that defendants traveled to Virginia in connection with the Delaware sale. Nor is there any allegation that any part of the real estate contract was to be performed in Virginia. At most, plaintiffs allege that defendants mailed blueprints, the executed real estate contract and the deed to plaintiffs in Virginia; plaintiffs tendered a $10,000.00 check drawn on a Virginia bank; and defendant Spangler made numerous telephone calls to plaintiffs in Virginia about the transaction involving the Delaware house. Telephone calls and mailings to a plaintiff in the forum state do not rise to the requisite level for specific jurisdiction. Eagle Paper Int'l, Inc. v. Expolink, Ltd., No. 2:07cv160, 2008 WL 170506, at *5 (E.D. Va. Jan. 17, 2008) ("[I]t is well settled that mere

telephone calls and electronic communications in furtherance of a transaction are insufficient to constitute purposeful activity." (citation omitted)); Consulting Eng'rs, Inc. v. Geometric Software Solutions, No. 1:06cv956, 2007 WL 1072010, at *5 (E.D. Va. Apr. 3, 2007) (finding the exchange of emails and phone calls for the purpose of engaging in a business transaction was insufficient to satisfy specific jurisdiction), aff'd, 561 F.3d 273 (5th Cir. 2009); Superfos Investments Ltd. v. FirstMiss Fertilizer, Inc., 774 F. Supp. 393, 397 (E.D. Va. 1991) ([I]t is generally held that mere phone calls and letters, and arguably fax communications, in furtherance of a transaction are insufficient to form a basis for personal jurisdiction." (citations omitted); see also Bucks Co. Playhouse v. Bradshaw, 577 F. Supp. 1203, 1209 (E.D. Pa. 1983) (stating that "a series of telephone calls, the mailing of the picture and biographic material, and one telegraph," do not rise to the level of "substantial."). Moreover, "the Supreme Court [has] rejected [a] plaintiff's contention that accepting checks drawn on a bank in the forum state was a basis for finding jurisdiction in that state." Mellon Bank (East) PSFS, N.A. v. DiVeronica Bros., Inc., 983 F.2d 551, 555 (3d Cir. 1993) (citing Helicopteros, 466 U.S. at 416). Taken together, these scant contacts with Virginia fall far short of purposeful availment, and there is no basis for a finding of specific jurisdiction.[3]

## IV.

Finally, plaintiffs claim that Spangler waived his right to challenge personal jurisdiction by responding to a Motion to Disqualify Counsel (Dkt. #21), despite the fact that Spangler's first appearance in this court challenged personal jurisdiction alone. Spangler contends that this subsequent appearance was a required, responsive brief under the local rules. W.D. Va. Loc. Civ. R. 11(c)(1). The Fourth Circuit has interpreted Federal Rule of Civil Procedure 12(h) to

---

[3] As purposeful availment plainly is not met here, the court is not required to address the remaining elements of the specific jurisdiction test. Consulting Eng'rs, 561 F.3d at 278.

8

allow "an implied waiver of a personal jurisdiction defense by defendants who appear before a court to deny the allegations of a complaint, but who fail to make personal jurisdiction objections at the time of their appearance." Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002) (citing Bethlehem Steel Corp. v. Devers, 389 F.2d 44, 46 (4th Cir. 1968)). Because Spangler has made no arguments on the merits of this case, and challenged personal jurisdiction in his first appearance, it is clear that he has not waived that defense.

V.

In short, the allegations of this case concern certain failures to disclose and misrepresentations concerning the sale of real estate located in Delaware. Not only is the real estate located in Delaware, the sales contract was executed there, the closing took place there and the alleged misrepresentations and failures to disclose were made there. Plaintiffs do not allege continuous and systematic contacts by defendants with Virginia, nor have defendants purposefully availed themselves of the privilege of conducting business in Virginia, as none of the actions giving rise to the alleged misrepresentations and failures to disclosure took place in Virginia.

As such, this dispute is not properly before a Virginia court and must be resolved in Delaware. An order dismissing this case for lack of personal jurisdiction will be entered.

Entered: July 21, 2011

/s/ Michael F. Urbanski

Michael F. Urbanski
United States District Judge